FILED
2023 Feb-28  PM 01:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| AMANDA HOWARD, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) ) |
| **Plaintiff,** | ) ) **CIVIL ACTION CASE NUMBER:** **(CLASS ACTION)** |
| **v.** | ) ) |
| **LINDT & SPRÜNGLI (USA), INC.,** | ) ) ) |
| **Defendant.** | ) |

**INDIVIDUAL AND CLASS ACTION**
**COMPLAINT AND DEMAND FOR**
**JURY TRIAL**

Plaintiff, Amanda Howard (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorney, alleges the following upon information and belief, based on personal knowledge of the Plaintiff and upon investigation by Plaintiff's counsel.

## NATURE OF THE ACTION

1.  This action complains about the deceptive business practices of the Defendant, Lindt & Sprügli (USA), Inc. (hereinafter "Lindt") in marketing Defendant's 85% Cocoa Dark Chocolate and Defendant's 70% Cocoa Dark Chocolate (the "Products").

2.  Defendant is marketing the products with highly dangerous levels of lead and cadmium.  "Lead is a highly toxic metal and a very strong poison.  Lead poisoning is a serious and sometimes fatal condition.  It occurs when lead builds up in the body.  Young children are most vulnerable.  Lead poisoning can be treated, but any damage caused

1

cannot be reversed."[1]

3.  Cadmium is also a dangerous and harmful chemical when consumed.  Cadmium is used in many products, including batteries, pigments, metal coatings, and plastics, and is found in cigarette smoke.  Exposure to even low levels of cadmium in air, food, water, and tobacco smoke over time may build up cadmium in the kidneys and cause kidney disease and fragile bones.  Cadmium is also considered a cancer-causing agent.[2]

4. Consumer Reports Magazine and independent testing discovered that Defendant's subject products contained high levels of cadmium and lead.[3]  Using the California's Maximum Allowable Dose Level (MADLs) for lead (0.5 Micrograms) and cadmium (4.1 mcg), Consumer Reports Magazine found that Lindt's 70% Cocoa dark chocolate product had 48% lead and 116% cadmium, while Lind's 85% Cocoa dark chocolate had 66% lead and 80% cadmium.[4]  California's MADLs (otherwise known as Proposition 65) is a regulatory standard for chemicals causing reproductive toxicity.[5] Consumer Reports' food safety researcher found that consistent ingestion of lead and cadmium over time could cause *inter alia* nervous system problems, kidney damage and reproductive issues.

5.  In making its analyses of all dark chocolate products, Consumer Reports reported

---

[1] https://www.healthline.com/health/lead-poisoning

[2] https://www.cdc.gov/biomonitoring/Cadmium_FactSheet.html

[3] https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/

[4] *Id.*

[5] https://oehha.ca.gov/proposition-65/general-info/current-proposition-65-no-significant-risk-levels-nsrls-maximum

that five of the tested dark chocolates had a relatively low percent of lead and cadmium, which proves that safe dark chocolate production is available.

6.  Defendant is under a duty to produce candy that is safe for all ages to eat.  Yet its advertising and marketing campaign for the Products is false, deceptive, and misleading because it does not disclose the high levels of lead and cadmium in the Products.  High levels of lead and cadmium in food products is obviously material to reasonable consumers, because these chemicals pose serious health risk, even in small dosages. Additionally, the lead and cadmium levels in the Products could not be known by a reasonable consumer before purchasing them and may not be determined without extensive and expensive scientific testing, which Plaintiff and the putative classes had no duty to complete.  Accordingly, consumers rely on Defendant to be truthful regarding the ingredients, including the existence of lead and cadmium, in the Products.

7.  On the other hand, Defendant knew and could not be unaware of the existence of lead and cadmium in the Products.  Defendant was under a duty to market the subject Products without the high levels of lead and cadmium. Defendant sources the ingredients and manufactures the Products and has exclusive knowledge of the quality control testing on the Products and the ingredients contained therein.  Upon information and belief, Defendant analyzes the subject product and has been for years aware of the Products' high levels of lead and cadmium.

8.  Plaintiff and those similarly situated, ("Class Members") relied on Defendant's misrepresentations and fraudulent omissions that the Products contained only safe dark chocolate candy ingredients when purchasing the Products.

9.  Plaintiff and Class Members paid a premium for the Products based upon

3

Defendant's marketing and advertising.  Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations and omissions, Plaintiff and Class Members suffered an injury in the amount of the premium paid. Alternatively, Plaintiff alleges that the Products were defective and she and the putative classes were damaged in the total amounts of the purchase price.  Plaintiff and class members would not have purchased and ingested the Product had they known of the extraordinary dangerous levels of lead and cadmium.

10.  Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

11.  This court has jurisdiction over this civil action under the Class Action Fairness Act of 2005.  The amount in controversy exceeds the sum or value of Five Million Dollars ($5,000,000), exclusive of interest and costs; there is diversity of citizenship because named Plaintiff and certain members of the class are citizens of a different state than Defendant, as required by 28 U.S.C. § 1332(d)(2).

12.  This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of Alabama.

13.  Venue is proper in this judicial district because Defendant conducts substantial business in this district and the events giving rise to Plaintiff's claim occurred in this district; the unlawful conduct complained of herein occurred in this district.

## PARTIES

14. Plaintiff Amanda Howard is an individual consumer who, at all times material

hereto, was a citizen of the State of Alabama.  Plaintiff purchased the Products in Shelby County, Alabama and previously has on multiple occasions during the Class Period.  Prior to purchasing the Products, Plaintiff reviewed the Products' labels, and there was no reference to the Products' containing lead and/or cadmium.

15.  Defendant, Lindt & Sprügli has its principal place of business in Stratham, New Hampshire, and markets the subject Products in the State of Alabama and throughout the United States.

## FACTUAL BACKGROUND

16.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Products as safe candy; while at the same time having knowledge of the high levels of lead and cadmium in same.

17.  Attachments A and B are likenesses of the Products' labeling at the occasion of Plaintiff's purchases.

18.  Plaintiff purchased the Products in reliance on Defendant's representation that the Products contained at a minimum reasonable dark chocolate ingredients and were safe for consumption.  Plaintiff had no reason to believe when purchasing the Products that such contained lead and cadmium.  If the Products did not contain lead and cadmium, Plaintiff would continue to purchase the Products.

19.  Further, had Defendant disclosed that the Products contained high levels of lead and cadmium, Plaintiff would not have been willing to purchase the Products.  Plaintiff purchased and paid more for the Products than said Products were worth.  The Products that Plaintiff received were worth less than the Products for which she paid.  Plaintiff was injured in fact and lost money as a result of Defendant's improper, deceitful conduct.

5

## FACTUAL BACKGROUND

20.  Consumers have become increasingly concerned about the effects of unhealthy chemicals in food products that they and their family members consume.  Companies, such as Defendant, have capitalized on consumers' desire for safe products, and indeed consumers are willing to pay, and have paid, a premium for such perceived safe and high-quality food products.

21.  Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains lead, cadmium, or other unsafe and unhealthy substances, especially at the point of sale.  Therefore, reasonable consumers, including Plaintiff and the putative classes, must and do rely on Defendant to truthfully and completely disclose the character and ingredients of food products on their labels.

22. Except for minor and irrelevant exclusions, pursuant to Ala. Admin. Code r. 420-3-20-.02 (Ala. Admin. Code [2021 Ed.]), Alabama has adopted as law in Alabama the federal food related CFRs (Code of Federal Regulations) referenced hereafter.  All of the following references to the CFR and Federal Food, Drug and Cosmetic Act (FDA) are thereby law in Alabama.  All references to federal law and standards are thus Alabama law and standards, which form the legal standard to which Defendant is required to comply.

23. The subject product is deceptively marketed by Defendant without informing all purchasers of the dangerous levels of lead and cadmium. The said product is in violation of a number of federal, and thus Alabama, food regulations:

    a.  the product is deceptively marketed;

    b.  both of Defendant's subject products have no label referencing the high levels

of lead and cadmium;

c.  the product is misbranded under federal law and regulations (and thus Alabama law);

d.  the bold font on the product's front refers to the candy with the noun "Excellence", which causes a reasonable consumer to expect such to be the case as not containing dangerous levels of lead and cadmium;

e.  the Ingredients listing on the reverse of the label has no reference to the lead and cadmium within the dark chocolate.

24. Consumers reasonably rely on the marketing and information of Defendant's labels in making purchasing decisions.  By marketing the Products as containing only "excellent" dark chocolate ingredients, and not disclosing the presence of cadmium and lead, Defendant misleads reasonable consumers.

25. Despite Defendant's knowledge of lead and cadmium in the Products, Defendant failed to provide any warning on the location that every consumer looks when purchasing a product – the packaging labels – that the Products contain lead and cadmium.

26.  Defendant's concealment was material because people are concerned with what is in the food that they are putting into their bodies, as well as parents and caregivers being especially concerned with what they are feeding the children in their care. Consumers such as Plaintiff and the putative classes obviously are influenced by the ingredients listed, as well as any warnings (of lack thereof) on the food packaging they buy.  Defendant knows that if it has not omitted that the Products contained lead and cadmium and that the Products were not safe or healthy for consumption then Plaintiff and the classes would not have paid a premium for the Products (or purchased them at

7

all).

27.  Plaintiff and the putative classes reasonably relied to their damage on Defendant's misleading representations and omissions.

28. Defendant's continued marketing of the Products is misleading reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the putative classes.

29. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for the Products.  Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the putative classes would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the putative classes would not have been willing to purchase the Products, and would not have purchased same.

30.  Plaintiff and the putative classes all paid money for the Products; however, Plaintiff and the putative classes did not obtain the full value of the marketed Products due to Defendant's misrepresentations and omissions.  Plaintiff and the putative classes purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products and in actuality, would not have bought the defective products at all.  Consequently, Plaintiff and the putative classes have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

31. The "front" of a food package, according to federal (thus Alabama) regulations, is referred to as the principal display panel (PDP). See 21 CFR 101.1.  According to the federal Food and Drug Administration (FDA), it is that portion of the package label that is

most likely to be seen and depended upon by the consumer at the time of purchase.  The PDP is to be a correct statement of the products' contents.  See 21 CFR 101.3(a) and 101.105(a).

32.  In the instant case, the 85% version, in addition to stating "Excellence", also refers to the contents as "Full-bodied cocoa flavor;" while the 70% version, in addition to describing the contents as "Excellence" describes the contents "Exceptional cocoa flavor".  The Products are not excellent.  Defendant knew or should have known that the Products were not "excellent."  The Products' flavors are immaterial in the instant case when compared to the primary requirement of food safety.  The Products' claim of "excellence" only shows the intention of Defendant to sell the Products despite the lead and cadmium ingredients.

33. Furthermore, the Ingredient List (contents) on the reverse label on every product sold in the United States is required to be a listing of each ingredient in an accurate, not misleading manner.  See 21 CFR 102.5 (a) and (b), 21 CFR 101.4(a).

34. Under federal food regulations, the contents in their entirety are to also be listed on the "information panel" which is immediately to the right of the PDP.  See 21 CFR 101.2 through 101.9 and 21 CFR 101.105.  In this case, Defendant, markets a product that incorrectly and falsely has no reference to the lead and cadmium contents in violation of federal and thus Alabama law.  Thus, not only does Lindt describe the Product deceptively, but also the listing of ingredients is incomplete with no reference to the high levels of lead and cadmium.

35. The Code of Federal Regulations respecting food labeling sets forth the extraordinary lengths that federal law expects no ounce of deception in food labeling:

(a)     The common or usual name of a food (appearing on the container's front), which may be a coined term, shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its <u>characterizing properties or ingredients</u>.  The name shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name.  Each class or subclass of food shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods.

(b)     <u>The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case</u>.  21 CFR 102.5 (a) and (b) (emphasis added)

Defendant obviously violates the immediately above-mentioned regulations.

<u>**CLASS ALLEGATIONS**</u>

36.   Plaintiff brings this case individually, and as a class action, pursuant to R. 23, Fed. R. Civ. Proc., on behalf of all persons who have purchased Defendant's Lindt 85% Cocoa Dark Chocolate and Lindt 70% Cocoa Dark Chocolate in the United States and Alabama as covered immediately below.

37. Plaintiff seeks to represent the following Classes:

*       **Alabama Class:  All persons in the State of Alabama who purchased Lindt 85% Cocoa Dark Chocolate and Lindt 70% Cocoa Dark Chocolate in the last six (6) years.**

*       **The National Class:  All persons residing in the United States who purchased Lindt 85% Cocoa Dark Chocolate and Lindt 70% Cocoa Dark Chocolate in the last six (6) years.**

Excluded from the Classes are the following:

i.      Any and all federal, state, or local governments, including but not limited to their department, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

ii.     Individuals, if any who timely opt out of this proceeding using the correct protocol for opting out;

iii.    Current or former employees of Defendant;

iv.     Individuals, if any, who have previously settled or compromised claim(s) relating to the Products; and

v.      Any currently sitting federal judge and/or person within the third degree of consanguinity to any federal judge.

38.  Plaintiff seeks a judgment on a Class-wide basis for herself and the Classes under the following counts.

39. Defendant violated the rights of each Member of the Classes in the same fashion based upon Defendant's uniform actions in its marketing, producing, selling, design and distributing of it's the Products.

40. Plaintiff should be approved to maintain this action as a class action for the following reasons:

41. **Numerosity:**  Members of the Classes are so numerous that individual joinder is impracticable.  The proposed Classes contains thousands of Members.  The Classes are therefore sufficiently numerous to make joinder impracticable, if not impossible.

42. **Common Questions of Fact and Law Exist:**  Common questions of fact and law exist as to all Members of the Classes, including whether Defendant marketed, designed,

produced and distributed the Product with its representations, implied and expressed warranties and breaches of agreement in fact and implied.

43. **Typicality:** Plaintiff's claims are typical of the claims of the Classes. State and federal food law additionally form the framework of Defendant's legal requirements as reasonable and necessary standards by which Defendant is to comply. Violations of said standards impose the following causes of action. Furthermore, Plaintiff and all Members of the Classes sustained monetary and economic injuries arising out of Defendant's unlawful conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all putative Class Members.

44. **Adequacy:** Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Classes – all seek redress and prevention for the same unlawful conduct. Plaintiff has retained Counsel who is competent and highly experienced in complex class action litigation, and he intends to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiff and her counsel. Plaintiff's claims, like those of the Classes, are antagonistic to Defendant.

45. **Predominance:** Common questions of fact and law predominate over any questions affecting individual Class Members.

46. **Superiority:** A class action is superior to other available means of fair and efficient adjudication. The injury suffered by each individual Class Member is very small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be impossible for all Members of the Classes to effectively redress the wrongs done to them on an individual

basis. Therefore, a class action is the only reasonable means by which Plaintiff and the Classes may pursue their claims. Moreover, even if the Members of the Classes could pursue such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, by the complex legal and factual issues of this case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

47. Plaintiff brings this action for herself and on behalf of a class of individuals in the State of Alabama and throughout the United States who purchased said Products.

## COUNT I

## DECEPTIVE PRACTICE STATUTES

### (On Behalf of the Plaintiff and the Classes)

Plaintiff adopts paragraphs 1. thru 47. as if fully set out herein.

48. Ms. Howard, for herself and on behalf of the classes and subclasses, brings this action under the consumer protection statutes of all fifty (50) states:

a.    Alabama Deceptive Trade Practices Act, ALA. Code § 8-19-1, *et. seq.*;

b.    Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;

c.    Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;

d.    California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et. seq.* and Unfair Competitive Law, Cal. Bus. Prof. Code §§ 17200 – 17210 *et. seq.*;

e.    Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;

f.    Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;

g.      Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;

h.      District of Columbia Consumer Protection Procedure Act, D.C. Code §§ 28-3901, *et. seq.*;

i.      Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes* § 501.201, *et. seq.*;

j.      Georgia Fair Business Practices Act, § 10-1-390 *et. seq.*;

k.      Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;

l.      Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

m.      Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

n.      Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

o.      Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

p.      Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

q.      Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r.      Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s.      Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t.      Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u.      Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v.      Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w.      Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

x.      Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z.      New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa.     New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb.     New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc.     New York General Business Law ("GBL") §§ 349 & 350;

dd.     North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

ee.     Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ff.     Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

gg.     Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608€ & (g);

hh.     Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

ii.     South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

jj.     South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

kk.     Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

ll.     Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

mm.     Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

nn.    West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

oo.    Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*;

49.  Defendant's acts, practices, labeling, advertising, packaging, representations and omissions, while unique to the parties, have a broader impact on the public.

50. As reasonable consumers, Plaintiff and class members desired to purchase the Products  with the reasonable assumption that the subject goods was free of heightened levels of lead and cadmium, complied with applicable law, regulations and the represented contents, when such did not; Defendant is guilty of marketing said goods:

- so that such causes confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services;

- by representing that said goods have sponsorship, approval, characteristics, ingredients, uses, benefits or qualities that they do not have;

- by representing that said goods are of a particular standard, quality or grade;

- by marketing the said goods in violation of law;

- by engaging in an unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce;

- by representing said goods are of a quality that they are not; and

- by representing said Products as excellent even though such goods had heightened levels of lead and cadmium.

51. After mailing on February 2, 2023 a claim notice to Defendant, pursuant to law and not receiving any constructive response, Plaintiff asserts a statutory claim under the Alabama Deceptive Practices Act, Code of Alabama, §§ 8-19-1, et seq. and the

16

aforementioned statutes of all other 49 states.

52.    By engaging in the aforementioned unlawful and deceptive acts, Defendant caused monetary damage to Plaintiff and classes of similarly situated persons by engaging in a trade or commerce harmful to Plaintiff and the putative classes.

53. Plaintiff individually and on behalf of the classes request the following relief:

a.   the relief and damages allowed by each jurisdiction of the residences of each putative class member; including but not limited to any allowed multiple of damages;

b.   appropriate injunctive relief;

c.   attorneys' fees and costs; and

d.   such other, further and general relief for which Plaintiff and the classes might be equitably qualified.

## COUNT II

## BREACH OF WARRANTY

### (On Behalf of the Plaintiff and the Classes)

54. Plaintiff realleges and incorporates by reference the preceding paragraphs numbered 1. thru 47. of this Complaint as if fully set forth herein.

55.  Plaintiff and the class members entered into sales agreements with Defendant at the time they purchased the products from Defendant.   The terms of such sales transactions included implied promises and affirmations of fact by Defendant that said products were being marketed in compliance with applicable law and that the products contained contents commensurate with law and the products' representations.   The Defendant's representation of the products' ingredients amounted(s) to a breach of warranty, both express and implied, due to the products not being fit for the purpose

intended.

56. The implied warranty and express warranty were made by Defendant to induce Plaintiff and the class members to purchase the dark chocolate products from Defendant.

57. All conditions precedent to Defendant's liability under these warranties have been fulfilled by Plaintiff and the class members (a.) giving Defendant sufficient statutory notice before this filing and (b.) by paying for the goods at issue.  Additionally, Defendant had actual and/or constructive notice of their own false marketing and sales practices but to date have taken no action to remedy their breaches of implied or express warranty.

58. Defendant breached the terms of the warranty because the products purchased by Plaintiffs and the class members did not conform to the express and implied affirmations of fact by Defendant – that they were being sold according to law and by representing that the candy was free of impurities such as lead and cadmium and was an excellent product.  In fact, they were not.

59. As a direct and proximate result of Defendant's breach of warranty, Plaintiff and the class members have been injured and have suffered actual damages because the subject Products upon attempting to use, same were rendered not merchantable for the intended purpose.

## COUNT III

## BREACH OF CONTRACT

## (On Behalf of the Plaintiff and the Classes)

60. Plaintiff realleges and incorporates by reference the preceding paragraphs numbered 1. thru 47., as if fully set out herein.

61. Plaintiff and the class members entered into implied agreements with Defendant.

62. The agreements provided that Plaintiff and the class members would pay Defendant for its products.

63. The contracts further provided that Defendant would provide Plaintiff and the class members subject products as required by law with contents commensurate with its container.

64. Plaintiff and the class members paid Defendant for the products that they purchased, and satisfied all other conditions of the agreements.

65. Defendant breached the implied agreements with Plaintiff and the class members by failing to comply with the material terms of providing the candy as required by law nor as represented.

66. As a direct and proximate result of Defendant's breach, Plaintiff and the class members have been injured and have suffered actual damages due to the candy not being as represented.

## COUNT IV

### NEGLIGENCE

**(On Behalf of the Plaintiff and the Classes)**

67. Plaintiff realleges and incorporates by reference the preceding paragraphs numbered 1. thru 47. of this Complaint as if fully set forth herein.

68. Plaintiff alternatively claims that Defendant in a negligence manner marketed and sold to Plaintiff and the classes the product heretofore mentioned.

69. Plaintiff claims that said marketing of the Products without regard to the legal requirements, and in violation of law (amounting to negligence per se) was done and is presently continuing in a negligent manner and as a proximate result thereof, the Plaintiff

and the classes were damaged as herein claimed.

70.  Plaintiff further alleges that said marketing of the Products in a negligent manner is violative of Alabama and federal legal requirements and should be restrained and be caused to cease.

71.  Plaintiff prays that due to the damage proximately caused by Defendant to Plaintiff and the classes that relief is demanded as hereinafter requested.

## COUNT V

### WANTONNESS

### (On Behalf of the Plaintiff and the Classes)

72.  Plaintiff realleges and incorporates by reference the preceding paragraphs numbered 1. thru 47. of this Complaint as if fully set forth herein.

73.  Plaintiff claims that Defendant in a wanton manner has marketed and is marketing to Plaintiff and the classes the products heretofore mentioned.

74.  Plaintiff claims that said marketing of the subject products without regard to the legal requirements and containing heightened levels of lead and cadmium was done and is presently continuing in a wanton manner and as a proximate result thereof, the Plaintiff and the classes were damaged as herein claimed.

75.  Plaintiff further alleges that said marketing by Defendant of said misbranded Products in a wanton manner, is violative of legal requirements throughout the United States and should be restrained and be caused to cease, as hereinafter claimed.

76.  Plaintiff prays that due to the damage proximately caused by Defendant to Plaintiff and the classes that punitive monetary relief is also demanded as hereinafter requested.

## COUNT VI

## CLAIM FOR INJUNCTIVE RELIEF

### (On Behalf of the Plaintiff and the Classes)

77. Plaintiff realleges and incorporates by reference the preceding paragraphs numbered 1. thru 47. of this Complaint as if fully set forth herein.

78. Plaintiff and the putative classes, need and are entitled to, an order for declaratory relief declaring that Defendants' sales practices alleged herein violate the Alabama Food Code, federal food law and regulations and the laws of the forty-nine other states as provided herein and by declaring that the aforementioned refusal by Defendant to follow the applicable law is in violation of the requirement to place the true nature of the products on the package labels.

79. Defendant is presently continuing each of these complained-of practices in Alabama and the United States. Plaintiff has previously served legal notice on Defendant to comply with legally required labeling as described above. Defendant has refused and continues to knowingly ignore such responsibility. This matter should be settled and a declaratory judgment will assist in same. Plaintiff therefore alleges that the requested declaratory judgment is in the public interest.

80. Plaintiff on behalf of the classes have a significant interest in this matter in that each has been, and will again in the future, along with putative class members, be continuously subjected to the unlawful policies and practices alleged herein. As with Plaintiff, members of putative classes are continuously and unwittingly subjected to the Defendant's knowing disregard of the Alabama Food Code, the laws of the state where putative class members other than Alabama residents reside, and FDA regulations and

are regularly subjected to Defendant's deceptive marketing.

81. Further, Plaintiff alleges on behalf of the afore-mentioned putative classes that class members routinely purchase subject products from Defendant and are entitled to know that the purported product will legally be free of heightened levels of lead and cadmium and will display its true contents at the time of purchase.  Until a change is legally declared, Plaintiff and members of the public will be regularly subjected to Defendant's unlawful conduct which is alleged herein and will be subject to such conduct in the future.

82. Based on the foregoing, a justiciable controversy is presented in this case, rendering declaratory judgment appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and that judgment be entered in favor of Plaintiff and the class members against Defendant as follows:

A.    Enter an order certifying the proposed classes, designating Plaintiff as the representative for the class members that she seeks to represent, and designating the undersigned as class counsel;

B.    Declare that Defendant is financially responsible for notifying all class members of Defendant's deceptive receipt, shipping, advertising, sales, and marketing practices alleged herein;

C.    Award damages to Plaintiff and members of the classes in an amount appropriate to compensate them for purchasing the product and/or as provided by applicable law as statutory damages;

D.    Award multiple and treble damages to the extent provided by applicable

law;

  E. Find that Defendant's conduct alleged herein be adjudged and decreed in violation of the law cited above;

  F. Grant injunctive and declaratory relief to end the challenged conducts;

  G. Grant reasonable attorneys' fees pursuant to law and as otherwise permitted by statute, with reimbursement of all costs and expenses incurred in the prosecution of this action; and

  H. Grant such other relief as this Court deems just and proper.


      Respectfully submitted,

    BY: */s/ Charles M. Thompson*
       Charles M. Thompson, Esq. THO019
       ASB-6966-P77C
       101 Mohawk Drive
       Trussville, AL 35173
       (205) 995-0068
       Fax (866) 610-1650
       Email: cmtlaw@aol.com


**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**


      */s/ Charles M. Thompson*
      Charles M. Thompson
      Attorney for Plaintiff


**SERVE DEFENDANT via certified mail at this address:**

**LINDT & SPRÜNGLI (USA), INC.**
One Fine Chocolate Place
Stratham, NH 03885-2592